AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| ) | Case No. 22-MJ-03644-Torres |
| MOHAMMAD AHMED KHAN ) | |
| ) | |
| ) | |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____ in the county of _____Miami-Dade_____ in the _____Southern_____ District of _____Florida_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1201(a)(1) and 2 | Kidnapping |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☒ Continued on the attached sheet.

_____ ID #101003
*Complainant's signature*

Charles Benson, Special Agent; FBI
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by _____FaceTime_____

Date: 9/25/2022

_____
*Judge's signature*

City and state: Miami, Florida    The Honorable Edwin G. Torres, Chief U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Charles Benson, being duly sworn, depose and state that:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have served in this capacity since February 2022. Currently, I am assigned to the Violent Crimes and Fugitive Task Force of the FBI's Miami Division and have been at this location since September 2022. My duties involve investigating bank robberies, Hobbs Act robberies, extortion, kidnappings, and other violations of federal law. In my current capacity, I have assisted in the execution of search warrants, interviewed subjects, victims, and cooperating individuals; and used historical cell site analysis to locate the phones of subjects and victims.

2. I make this Affidavit for the limited purpose of establishing probable cause to believe that MOHAMMAD AHMED KHAN ("KHAN"), together with others, committed a Kidnapping in violation of Title 18, United States Code, Sections 1201(a)(1) and 2.

3. This Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement personnel and civilian witnesses. Because this Affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Rather, I have included only the facts that are sufficient to establish probable cause. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## **PROBABLE CAUSE**

### *Agents Learn of a Kidnapping*

4.     On or about September 22, 2022, at 2:34 PM, the Miami-Dade Police Department ("MDPD") received a 9-1-1 call from Witness 1 reporting a kidnapping at his residence at 4770 SW 87th Place, Miami, Florida, 33165 (the "Residence") and the Domino's located at 1105 NW 22nd Avenue, Miami, Florida, 33125 (the "Domino's"). Witness 1 stated his nanny ("Victim 1"), two minor children, ages two and four ("Victim 2" and "Victim 3," respectively), and wife ("Victim 4") (collectively, the "Victims") had been kidnapped. MDPD dispatched units to the Residence, and notified agents and Task Force Officers with the FBI, who responded to the scene.

### *The Subjects Kidnap Victim 1, Victim 2, and Victim 3*

5.     Victim 1 stated that, on or about September 22, 2022, at approximately 11:30 AM, Victim 1 was on the first floor of the Residence with one minor child while the other minor child was asleep on the second floor. Four males ("Subject 1," "Subject 2," "Subject 3," and "Subject 4") and two females ("Subject 5" and "Subject 6") (collectively, the "Subjects") entered the residence. One male subject entered the Residence through the open garage door while the remaining subjects entered through the unlocked front door. Victim 1 saw that three of the male subjects possessed handguns that were either holstered or in their waistband.

6.     Victim 1 stated that one male subject questioned her about the location of Witness 1 and the roommate living in the Residence, and one male subject went upstairs to retrieve the minor child that was sleeping. Victim 1, Victim 2, and Victim 3 were then taken from the home and placed into a white Toyota RAV4 ("Vehicle 1"), which was occupied by Subject 5 and Subject 6. The four male subjects got into a black BMW ("Vehicle 2") and a red Jetta ("Vehicle 3"). All three vehicles then departed the Residence.

7. Video surveillance likewise captured the Subjects entering the home and departing with Victim 1, Victim 2, and Victim 3.

### *The Subjects Kidnap Victim 4*

8. The Subjects then drove Victims 1, 2, and 3 to Domino's where Victim 4 was working. Three of the male subjects were captured on video surveillance entering the Domino's. Victim 4 reported that one male subject jumped over the counter and grabbed Victim 4 by the throat. Victim 4 was forced out of the Domino's and put in the back seat of Vehicle 3. Video surveillance captured three male subjects escorting Victim 4 out of the store with one male subject maintaining his hand on the back of Victim 4's neck. Victim 4 stated one male subject appeared to be wearing a gun belt and another subject had pepper spray.

9. Victim 4 described that Vehicle 1, Vehicle 2, and Vehicle 3 departed the Domino's and drove for approximately 7-10 minutes before arriving behind a black commercial building where Victim 4 was then moved to Vehicle 2.

10. Victim 1 likewise recalled being driven to a second location where she estimated the car remained for several hours. After an unknown amount of time Victim 1 stated that Vehicle 3 left the parking lot to find a new spot that had less people walking around.

11. Victim 4 stated that one of the male subjects demanded Victim 4 pay him money or they would kill Victim 4 as well as Victim 1, Victim 2, and Victim 3. Victim 4 stated that the same subject attempted to contact TD Bank to access an account previously held by Victim 4 and attempted to gain access to Victim 4's bank accounts via her cellular telephone. The subject then utilized Victim 4's cellular telephone to contact Witness 1. He told Witness 1 he would kill all the Victims if Witness 1 did not wire $100,000 to a specified bank account. The subject also used Victim 4's cellular telephone to send photos of the Victims to Witness 1.

### *The Victims are Released*

12. After an unknown amount of time, Victim 1 stated that Subject 5 and Subject 6 received word to move to another location. Eventually, all three vehicles departed separately. Victim 1 described Vehicle 1 being driven around aimlessly and at one point driven through the Miami International Airport. At another point while driving around, Vehicle 1 pulled into a parking lot near the vicinity of 9337 Bird Road, Miami Florida 33165. Subject 5 and Subject 6 then received a call telling them to let Victim 1, Victim 2, and Victim 3 get out of the vehicle. All three victims were let out of Vehicle 1 before it departed the vicinity.

13. At approximately 7:45 PM, one of the subjects left Victim 4 at an unknown location. There, unidentified individuals agreed to assist Victim 4 in ordering her an Uber that returned her to the Domino's.

### *KHAN's Statements*

14. Surveillance images from a business near the Domino's captured the license plate of Vehicle 3. Vehicle 3 is registered to KHAN. On September 23, 2022, law enforcement reported to KHAN's known address in an effort to discuss Vehicle 3's involvement in the kidnapping. There, they spoke with a male who placed them in contact with KHAN. KHAN agreed to meet with officers at his place of employment.

15. There, law enforcement observed Vehicle 3. KHAN agreed to speak with law enforcement officers. As he was advised of his Miranda rights, KHAN stated that he may need to speak with a lawyer. KHAN then asked if he could make a call to his wife. After doing so, he advised officers that he wished to speak with them. Officers again advised KHAN of his Miranda rights, which he waived in writing.

16. KHAN admitted to acting as a security guard during the kidnapping of the Victims, although he disagreed that the events of September 22, 2022, should be characterized as a kidnapping. KHAN stated that on approximately September 21, 2022, he was contacted by a male subject requesting to hire two security guards for what KHAN stated was described as a "transaction." KHAN maintained that he was unfamiliar with the nature of the transaction with which the individual required assistance. KHAN stated he asked the individual whether he wanted KHAN to bring his firearm to the transaction, confirmed that a second armed "guard" was requested, and noted that KHAN and the other guard had a concealed carry permit. This male subject then called KHAN and asked that he and the other individual bring their firearms to the transaction.

17. KHAN and the second guard, who was contacted by KHAN, met with the male subject requesting security at a specified location and followed him, using Vehicle 3, to a residence in Southwest Miami-Dade County. KHAN described that he and the second guard entered a home there with the male subject who hired them, one other male subject, and two female subjects. He described that the male subject who hired him was "rude" to the female encountered in the home—Victim 1. KHAN described that Victim 1, Victim 2, and Victim 3 were then removed from the home and placed in one of the other two vehicles on scene. KHAN admitted that he carried his firearm, which was holstered and visible on his hip, during this encounter and the remainder of his time with the Victims.

18. Next, KHAN described that he and the second guard followed the other vehicles to a Domino's pizza store. There, KHAN stated he entered a Domino's while the individual who hired him removed a woman from the premises. As noted in paragraph 8, supra, Victim 4 reported that one male subject jumped over the counter and grabbed Victim 4 by the throat to remove her

5

from the location. KHAN is depicted in video surveillance, standing by while Victim 4 is retrieved from behind the counter. KHAN stated the subjects then escorted Victim 4 briefly to the vehicle that contained the other victims, and then placed Victim 4 in KHAN's vehicle, Vehicle 3. Victim 4 stated that, once in Vehicle 3, the individual who was wearing a hat and sunglasses during the kidnapping—which KHAN identified as himself in surveillance images from the kidnapping—instructed her to provide her bank account information to the other subjects.

19. KHAN stated he then drove Vehicle 3, with Victim 4, to a location as directed by the male subject who hired him. KHAN stated that all participants who were originally at the residence in Southwest Miami-Dade County, and the Domino's Pizza location, eventually met at this location. KHAN stated he heard the male subjects demanding money from Victim 4 and stating that she owed them money. KHAN maintained he did not know the nature of what was going on, and stated he assumed the encounter involved some sort of domestic dispute. He stated his role during the encounter was to protect the male subject who had hired him—the same individual who forcibly removed Victim 4 from the Domino's.

20. KHAN did not leave the scene where the Victims were held until he realized he was going to be late for another job. At that time, he departed in Vehicle 3, leaving the Victims and the second guard behind. Once at his other job location, KHAN called the subject who had hired him and told him he still owed KHAN money for his work that evening. The subject who hired KHAN then drove to KHAN's other job location, as directed by KHAN, and provided him and the second guard with $200 each in payment. The Victims were still with the other subjects at the time of this payment. KHAN stated that all the Victims were driven away from his job location and he did not know the outcome nor the fate of the Victims.

6

## CONCLUSION

21.     Based upon the information provided above, your Affiant respectfully submits that probable cause exists to believe that, on or about September 23, 2022, MOHAMMAD AHMED KHAN committed a Kidnapping in violation of Title 18, United States Code, Sections 1201(a)(1) and 2.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Respectfully submitted,

_____
Special Agent Charles Benson
Federal Bureau of Investigation

Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by FaceTime, on this 25 day of September 2022,
at Miami, Florida.

_____
THE HONORABLE EDWIN G. TORRES
CHIEF UNITED STATES MAGISTRATE JUDGE

7