UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-mj-03960 Damian

UNITED STATES OF AMERICA

vs.

JOSEPH CHRISTOPHER RICARD, TRANG
NGUYEN, CHRISTOPHER ALAN BAIRD, LUU
NGUYEN DIEU HONG, and JOE NATHAN
HIGHTOWER,

      Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  **No**

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?  **No**

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By:   */s/ Monica K. Castro*
     Monica K. Castro
     Assistant United States Attorney
     Court ID. A5502776
     99 NE 4th Street, 6th Floor
     Miami, Florida 33132
     Tel: (305) 961-9013
     Monica.Castro@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>JOSEPH CHRISTOPHER RICARD, et al.,<br><br>Defendant(s) | )<br>)<br>)  Case No.  1:22-mj-03960 Damian<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  September 21, 2022 through September 23, 2022  in the county of  Miami-Dade  in the  Southern  District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1201(a)(1) and 2 | Kidnapping |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☒ Continued on the attached sheet.

_____
Complainant's signature

Joshua Youngblood, Special Agent; FBI
Printed name and title

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by  FaceTime

Date:  11/17/2022

_____
Judge's signature

City and state:  Miami, Florida           The Honorable Melissa Damian U.S. Magistrate Judge
Printed name and title

<u>**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**</u>

I, Joshua Youngblood, being duly sworn, depose and state that:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have served in this capacity since 2022. I am currently assigned to the Miami Field Office South Florida Violent Crimes Task Force, which targets individuals involved in violent crime. As part of my duties, I investigate violent crimes including kidnappings in violation of Title 18, United States Code, Section 1201. In my current capacity, I have assisted in the execution of search and arrest warrants, interviewed subjects, victims, and cooperating individuals, and used historical cell site analysis to locate the phones of subjects and victims.

2.  I make this Affidavit for the limited purpose of establishing probable cause to believe that JOSEPH CHRISTOPHER RICARD ("RICARD"), TRANG NGUYEN ("NGUYEN"), CHRISTOPHER ALAN BAIRD ("BAIRD"), LUU NGUYEN DIEU HONG ("HONG"), and JOE NATHAN HIGHTOWER ("HIGHTOWER"), committed a Kidnapping in violation of Title 18, United States Code, Sections 1201(a)(1) and 2.

3.  This Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement personnel and civilian witnesses. Because this Affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Rather, I have included only the facts that are sufficient to establish probable cause. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

1

## **PROBABLE CAUSE**

### *Agents Learn of a Kidnapping*

4. On or about September 22, 2022, at 2:34 PM, the Miami-Dade Police Department ("MDPD") received a 9-1-1 call from Witness 1 reporting a kidnapping at his residence at 4770 SW 87th Place, Miami, Florida, 33165 (the "Residence") and the Domino's located at 1105 NW 22nd Avenue, Miami, Florida, 33125 (the "Domino's"). Witness 1 stated his nanny ("Victim 1"), two minor children, ages two and four ("Victim 2" and "Victim 3," respectively), and wife ("Victim 4") (collectively, the "Victims") had been kidnapped. MDPD dispatched units to the Residence, and notified agents and Task Force Officers with the FBI, who responded to the scene.

5. As discussed further herein, the Victims were later released. Victim 1 and Victim 4 were interviewed by law enforcement. Both Victim 1 and Victim 4 viewed six-pack photo arrays and identified RICARD, NGUYEN, BAIRD, and HONG as individuals who carried out the kidnapping. Victim 4 also positively identified HIGHTOWER as one of the participants.[1]

### *Subjects Kidnap Victim 1, Victim 2, and Victim 3*

6. Victim 1 stated that, on or about September 22, 2022, at approximately 11:30 AM, Victim 1 was on the first floor of the Residence with one minor child while the other minor child was asleep on the second floor. RICARD, BAIRD, NGUYEN, HONG, and two other male subjects entered the Residence without authority. Victim 1 saw that three of the male subjects possessed handguns that were either holstered or in their waistband.

---

[1] Victim 1 viewed a photo array including HIGHTOWER. The witness who performed the photo array stated that Victim 1 twice hesitated over HIGHTOWER's photo, but ultimately stated she did not feel she could make a positive identification of anyone within the packet.

7. Victim 1 stated that RICARD questioned her about the location of Witness 1 and the roommate living in the Residence, and directed another male subject, subsequently identified as MOHAMMAD AHMED KHAN ("KHAN") to go upstairs to retrieve the minor child that was sleeping. While the questioning was ongoing, Victim 1 stated that an individual fitting HIGHTOWER's description—a slim Black male with facial hair stood near the doorway and appeared to be armed. RICARD also directed Victim 1 to call Victim 4 and tell her that Victim 2 and Victim 3 were sick and Victim 4 needed to come to the Residence. Victim 1 complied. When Victim 4 did not arrive, RICARD reviewed Victim 1's phone to obtain Victim 4's work address. Victim 1, Victim 2, and Victim 3 were then taken from the Residence.

8. Surveillance images near the home captured the subjects entering the Residence and depict individuals with appearances that are consistent with RICARD, BAIRD, NGUYEN, HONG, and HIGHTOWER. The same surveillance captured the subjects exiting the home, with RICARD seen carrying one of the minor children outside.

9. Surveillance images show that Victim 1, Victim 2, and Victim 3 were taken from the Residence in a white Toyota RAV4 ("Vehicle 1"). Victim 1 stated that Vehicle 1 was operated by NGUYEN and also occupied by HONG. Victim 1 stated that NGUYEN told Victim 1 that she would not hurt Victim 1, Victim 2, or Victim 3, but that she just wanted money Victim 4 owed her. The four male subjects got into a black BMW ("Vehicle 2") and a red Jetta ("Vehicle 3"), and all three vehicles departed the Residence.

### *The Subjects Kidnap Victim 4*

10. The Subjects then drove Victim 1, Victim 2, and Victim 3 to the Domino's where Victim 4 was working. There, RICARD, BAIRD, KHAN, and a female that Victim 4 identified

as NGUYEN, were captured on video surveillance entering the Domino's. RICARD is seen pointing and gesturing towards Victim 4. The video surveillance then showed RICARD jumping the counter and pushing Victim 4 out of the Domino's. Victim 4 is seen attempting to resist.

11. Video surveillance then captured RICARD, BAIRD, NGUYEN, and KHAN escorting Victim 4 through the parking lot of the Domino's. Victim 4 stated one male subject appeared to be wearing a gun belt and another subject had pepper spray.

12. Victim 1 stated that Victim 4 was brought to Vehicle 1, where Victim 1 and Victim 4's children, Victim 2 and Victim 3, were being held. Victim 4 was shown that her children had been taken.

13. Victim 4 stated she was put in the back seat of a red vehicle, later identified through surveillance footage as Vehicle 3. She stated RICARD, HIGHTOWER, and KHAN were in the vehicle. Victim 4 was driven to a separate location, where RICARD demanded money from her. Victim 1, Victim 2, and Victim 3 were also taken to that same location and RICARD threatened to kill the Victims if a sum of money was not paid.

14. RICARD also photographed the Victims and sent the photos to Witness 1 in order to demand payment for their release. Law enforcement reviewed messages sent to Witness 1 transmitting these photos and demanding payment to a bank account in HONG's name. Victim 4 stated that all of the subjects, including BAIRD, NGUYEN, HONG, and HIGHTOWER were present for RICARD's threats and demands for money.

15. Victim 1 also stated she heard RICARD, NGUYEN, and HONG demanding money from Victim 4 and that BAIRD was present while this occurred. She also observed RICARD forcefully push Victim 4 in the presence of NGUYEN, HONG, and BAIRD.

16. Victim 4 further stated that RICARD, NGUYEN, and HONG attempted to call a bank in an effort to impersonate Victim 4 and obtain money from Victim 4. Victim 4 also stated that HIGHTOWER directed her to acquiesce to RICARD's demands for payment if she loved her children. At one point, HIGHTOWER and one of the female subjects also escorted Victim 1 to a restroom.

17. Victim 1 and Victim 4 stated the Victims were driven to multiple holding locations. Victim 4 reported that, at one point, she was driven to a separate location by BAIRD and RICARD where RICARD taped her hands and mouth and continued to demand money from Victim 4. Victim 4 stated that RICARD made repeated references to Victim 4 seeing her children "for the last time."

### *The Victims are Released*

18. After being driven to multiple locations, Victim 1 stated that NGUYEN and HONG received a call telling them to release Victim 1, Victim 2, and Victim 3, and all three were released. Victim 4 likewise described being transported to multiple holding locations. At approximately 7:45 PM, one of the subjects left Victim 4 at an unknown location. There, unidentified individuals agreed to assist Victim 4 in ordering her an Uber that returned her to the Domino's.

### *KHAN is Arrested*

19. Surveillance images from a business near the Domino's captured the license plate of Vehicle 3, which was used to take Victim 4 from that location. Vehicle 3 is registered to KHAN. On September 23, 2022, KHAN agreed to speak with law enforcement. Based on KHAN's statements and other evidence gathered by law enforcement, KHAN was arrested for his role in

the kidnapping of the Victims. On October 13, 2022, a Grand Jury sitting in the Southern District of Florida indicted KHAN, charging him with conspiracy to kidnap and four counts of kidnapping.

### *Additional Investigation*

20. KHAN consented to a search of his cellular telephone. Therein, law enforcement identified September 22, 2022 communications from a number identified as belonging to RICARD discussing whether the two men that RICARD had requested should be armed. This discussion is consistent with law enforcement's understanding that RICARD hired KHAN and HIGHTOWER to act as armed guards for the kidnapping.

21. In addition, law enforcement identified the Aloft Hotel in Miami, Florida as the location where RICARD met with KHAN, HIGHTOWER, and NGUYEN prior to the kidnapping. Immediately prior to the kidnapping, each are captured on video surveillance at that location, where RICARD also reserved two rooms registered in his own name between September 21 and September 23, 2022. At least one of those rooms was also linked to a rewards account in BAIRD's name.

22. Indeed, video surveillance captured BAIRD, NGUYEN, and RICARD, checking in to the Aloft Hotel on September 21, 2022. This is consistent with travel records showing that RICARD and NGUYEN traveled from California, where they each reside, to Miami, Florida on September 21, 2022, the day before the kidnapping. Similarly, travel records confirm that BAIRD and HONG traveled from Arizona, where they each reside, to Miami, Florida on September 21, 2022, the day prior to the kidnapping.

23. Moreover, RICARD, NGUYEN, and BAIRD, were captured on video surveillance associated with the rental of Vehicle 1, which was rented under NGUYEN's name. NGUYEN

also provided her driver's license when she rented Vehicle 1. Meanwhile, Vehicle 2 was rented under BAIRD's name, who also provided his driver's license when he rented Vehicle 2.

24. In addition to the foregoing, law enforcement obtained historical cell site information for cellular telephones operated by RICARD, NGUYEN, BAIRD, HONG, and HIGHTOWER.

25. A number ending in 0243 (the "0243 Number") was identified as RICARD's. Specifically, it is registered to a California business with a location at the address law enforcement identified as RICARD's according to his driver's license and where public records confirm both RICARD and NGUYEN are employed. The 0243 Number was also saved in KHAN's phone under the name "Chris," with the notation "Aloft Job." "Chris" is a shortening of RICARD's middle name, Christopher. Notably, Victim 4 stated that the subjects referred to RICARD as "Chris" during the kidnapping.

26. A number ending in 0926 (the "0926 Number") was identified as NGUYEN's. While the 0926 Number is not registered to a name or address, historical cell site information confirms the number was present at NGUYEN's known place of work on September 20, 2022, prior to the date travel records show NGUYEN traveled to Miami. Similarly, cell site information places the 0926 Number at NGUYEN's known residence on September 24, 2022, after she departed Miami.

27. A number ending in 7311 (the "7311 Number") was identified as HIGHTOWER's. That 7311 Number was saved in KHAN's phone as "Joe," a shortening of HIGHTOWER's first name. Subscriber information shows it was registered to a "Joe Black" at an address identified as HIGHTOWER's residential address in Department of Motor Vehicles records.

28. Numbers ending in 6826 and 8458 (the "6826 Number" and the "8458 Number," respectively) were identified as belonging to BAIRD and HONG. Both the 6826 Number and the 8458 Number were registered in BAIRD's name. Immigration records confirm that BAIRD and HONG are married, suggesting each operates one of the phones.

29. Historical cell site information shows that each of the aforementioned phones identified as belonging to RICARD, NGUYEN, BAIRD, HONG, and HIGHTOWER connected to a cell site tower in the vicinity of the Residence during the timeframe that Victim 1, Victim 2, and Victim 3 were taken from the Residence.

30. Likewise, historical cell site information shows that each of the aforementioned phones identified as belonging to RICARD, NGUYEN, BAIRD, HONG, and HIGHTOWER connected to a cell site tower in the vicinity of the Domino's during the timeframe that Victim 4 was taken from the Domino's.

## CONCLUSION

31. Based upon the information provided above, your Affiant respectfully submits that probable cause exists to believe that, on or about September 22, 2022, RICARD, NGYUEN,

[This Space Intentionally Left Blank]

BAIRD, HONG, and HIGHTOWER committed a Kidnapping in violation of Title 18, United States Code, Sections 1201(a)(1) and 2.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Respectfully submitted,

Special Agent Joshua Youngblood
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by FaceTime, on this 17th day of November 2022, at Miami, Florida.

THE HONORABLE MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

9